## CLAIM OF ADVERSE POSSESSION BY THE GRANTOR OF THE PROPERTY CONVEYED.

Common Pleas Court of Cuyahoga County.

JOSEPH BASKIN AND ANNA BASKIN v. EVA ERION AND
JOHN ERION.[*]

Decided, December 26, 1914.

*Title to a Way Claimed Through Adverse Possession—Based Upon an
Undisclosed Intention on the Part of the Grantor—To Hold the
Way as Against the Grantee and Her Successors in Title—Injunc-
tion Against Assertion of Title by Prescription.*

1. While a person may acquire title by prescription as against his
   grantee, his intention to hold adversely to the grantee must be
   evidenced by some overt act which is sufficient to inform the
   grantee of such purpose.

2. The claim in the instant case that the term of the adverse posses-
   sion began on the day of the delivery of the deed, is characterized
   by the court as repugnant to all sense of right, equity and justice;
   and the testimony affording but slight support for such a conten-
   tion, the court refuses to find that the grantor had an undisclosed
   purpose in mind at the time he made the grant to at once and im-
   mediately begin to hold the property adverse to the grantee, and
   the assertion of a title so acquired is enjoined.

*M. V. Emerman,* for plaintiffs.
*Laubacher & Kees,* contra.

KENNEDY, J.

This is an action in which the plaintiffs are asking for a per-
petual injunction against the defendants, and the manner in
which their cause of action arises is briefly and in substance
about as follows, as set out in plaintiff's petition:

Plaintiffs aver that on the 16th of February, 1889, Mr. Henry
Schafer, then the sole owner of the premises herein described,
executed and delivered to one Lucy Botsford a certain quit-claim

---

[*]Cause taken to the Court of Appeals and there dismissed.

deed, granting to the said Lucy Botsford, her heirs and assigns, "a perpetual right-of-way and easement to be used in common" in and to the premises described therein, which deed is on record. That Lucy Botsford, at the time of the delivery to her of this quit-claim deed, was the owner of certain premises next adjoining that of Henry Schafer. That the eastern extremity of said right-of-way and easement was coincident with the westerly line of said premises of Lucy Botsford, so that by virtue of said quit-claim deed a drive or alleyway ten feet in width was created over the land of Henry Schafer from Woodland avenue into the land and premises of Lucy Botsford. That on the 23d of January, 1893, Lucy Botsford conveyed said premises to one Clara Larwill, and, as a part of said conveyance and appurtenant thereto, executed and delivered to her a quit-claim deed granting to Clara Larwill, her heirs and assigns, a perpetual right and easement over the land of the said Henry Schafer, which easement is described as being over the same part and portion of Henry Schafer's land as the same is originally described in the deed from Schafer to Botsford. This quit-claim deed is also on record. That on the 30th of November, 1904, Clara Larwill conveyed to one George J. Eckert the said premises so received by her from Lucy Botsford, and, as part of said conveyance and appurtenant thereto, executed and delivered to Eckert a quit-claim deed granting and conveying to him the same easement already referred to. That on the 1st day of June, 1914, Eckert conveyed by warranty deed to the Baskins, plaintiffs herein, said property next adjoining that owned by Henry Schafer, and which property was conveyed by Botsford to Larwill and by her to Eckert. The deed from Eckert to plaintiffs is recorded in Cuyahoga county records. As part of said conveyance and appurtenant thereto, Eckert executed and delivered his quit-claim deed to these plaintiffs, conveying the same easement which he had acquired from his predecessor.

The plaintiffs say, in substance, that the said driveway has been open as such for a period longer than twenty-one years; that buildings have been erected upon the lands adjacent on all sides thereof and with reference thereto, so that there is now upon

the said land a driveway ten feet in width, commencing at Woodland avenue, running north sixty feet and east eighty-five feet into the land of these plaintiffs. That the said drive or alleyway, known in part as Schafer's Court, has been in public use by the citizens of the vicinity ever since the same has been established; that a public school is situated thereon, with egress and ingress thereto and from, through that portion of said alleyway running north from Woodland avenue; that many homes have been erected adjacent and with reference to the said alleyway, and it is the only means of ingress and egress to same, and it has been so used by the tenants thereof for a long period of time. That the defendant Eva Erion is the widow of Henry Schafer, and the defendant John Erion is her husband. Eva Erion is the owner, as widow and heir of Henry Schafer, of the premises next adjoining that of the plaintiffs, and is also the owner of the other property surrounding said drive or alleyway, and said John Erion is her duly authorized agent in respect thereto.

The defendants have prevented these plaintiffs from exercising their said easement right, as aforesaid, by means of physical force, and have threatened and continued to threaten to prevent and deprive plaintiffs of the use of the said driveway, so that the same will be permanently closed and the ingress and egress over the same to and from plaintiffs premises will be materially and irreparably interfered with. That said defendants have erected and maintained a fence across the eastern extremity of said driveway so as to prevent plaintiffs' entrance into the rear of plaintiffs' premises, and they have within the past two weeks caused to be erected a fence across the southerly extremity of said drive or alleyway on Woodland avenue, thereby completely closing both extremities of said drive or alleyway on Woodland avenue, thereby completely closing both extremities of said drive or alleyway and depriving plaintiffs of the use thereof. That the permanent closing of said driveway will irreparably damage plaintiffs' premises, and the amount of damage can not be ascertained in law, for which plaintiffs have no adequate remedy. Wherefore plaintiffs pray that the defendants and each of them, and

their unknown agents or anyone claiming by, through or under them, be restrained and enjoined from interfering with plaintiffs in the use and enjoyment of their easement in said driveway, and for other equitable relief.

To this petition the defendants answer and admit the following averments: The execution and delivery of said quit-claim deed by Henry Schafer to Lucy Botsford. That John Erion is the husband of the defendant, Eva Erion, and that she was the widow of Henry Schafer until her marriage to said John Erion. That defendants have prevented plaintiffs from driving over the land described in the petition, and have erected a fence across the southerly extremity of the land incorrectly termed "a drive or alleyway" in plaintiffs' petition, and that they have erected a fence across the easterly extremity of the land described in plaintiffs' petition, and maintain the same. For further answer they deny each and every other averment in plaintiffs' petition.

For a second defense they say, in substance, that at the time of the execution and delivery of the deed from Henry Schafer to Lucy A. Botsford a fence about five feet high existed across the easterly end of the land described in plaintiffs' petition, which had then existed in the same place for many years, and which remained in place until about the year 1910, when the fence complained of in plaintiffs' petition was erected by defendants on the exact line and position of said old fence. That for more than twenty-five years last prior to the filing of the petition herein said Henry Schafer, in his lifetime, and these defendants since his death, have had the actual, open, sole, exclusive, continuous and adverse use and possession of the lands described in plaintiff's petition, adversely to plaintiffs and those under whom plaintiffs claim; and that during all said time those under whom plaintiffs claim abandoned said land and all claim and right thereto and to the use thereof by easement, right-of-way or otherwise; and that by reason of all said premises all rights of plaintiffs' predecessors in title, if any they ever had, in the lands described in said petition, and to any easement or other interest concerning the same, were extinguished and terminated long before the conveyance to plaintiffs named in the petition herein.

To this answer the plaintiffs reply and admit that at the time of the execution and delivery of the deed from Henry Schafer to Lucy A. Botsford a fence existed across the easterly end of the land described in plaintiffs' petition, and they deny each and every allegation contained in the answer not expressly admitted in the reply.

Many important facts involved in this case are undisputed. There is no dispute but that on the 16th day of February, 1889, Mr. Henry Schafer was the owner of the parcel of land fronting on Woodland avenue. Upon this land were located two blocks fronting upon Woodland avenue and having an alleyway between them by which access was had to the rear of such parcel of land. There were also located on the same parcel of land two terraces, one behind each of said lots, with a strip of land about ten feet wide between them and the block in front. On the same day Lucy Botsford was the owner of a parcel of land lying just next east of the parcel owned by Henry Schafer, and on said day Henry Schafer made and delivered to Miss Botsford his deed, wherein and whereby he granted to her a right-of-way ten feet in width running down through this alleyway from Woodland avenue to the strip of land lying between the blocks in front and the terraces in the rear of his property, and then along this strip between the east lot and the east terrace to the boundary line between his property and the property of Miss Botsford. At the time this deed was made and delivered Miss Botsford was occupying her premises as a home, there being located on it a residence and barn. There was also a picket fence along the line between her property and the property of Henry Schafer. There is some dispute as to just what was done with this fence after Mr. Schafer delivered his deed to Miss Botsford. The defendants claim that that portion of this fence running from the Schafer block to the rear of said terrace remained where it was until it had rotted down to such an extent that there was only left a lower rail and base-board, and under the lower rail two or three posts. The plaintiffs' evidence tends to show that this particular portion of the fence was removed two or three years after Mr. Schafer's deed had been executed and delivered, and from that time on until four years prior to the commencement of this action access to the

Schafer land through this right-of-way was unobstructed, to the extent at least, that anyone desiring so to do could drive down this alleyway from Woodland avenue and across this ten-foot strip in the rear of the Schafer Block on and into the Schafer property.

I have no hesitation in saying that the weight of the evidence is with the plaintiffs in this case. Generally speaking, the witnesses of the defendant were persons who had no occasion to use this right-of-way, and their present memory of the condition of such fence is based upon such actual observation of the same as they made from time to time in going about upon the Schafer premises when other matters were or may have been on their minds, and the condition of that fence and the question whether or not such right-of-way was open or closed was not a matter of importance to them under the circumstances. Under such circumstances it is quite natural and to be expected that the witnesses would have a somewhat vague memory of a fence more or less worn out and dilapidated. The exact location of the fence would not be a matter of such importance as to impress this upon their memories; and a possible desire to help the party for whom they testified may have led them to add to such vague memory the further proposition that this old fence went clear up to the Schafer Block. The witnesses for the plaintiff, on the other hand, were persons who had occasion to use this right-of-way, and some of them at least were interested in the question of the existence of the fence and its being open for use.

Counsel for the defense have attacked the testimony of Mrs. Larwill very bitterly, but I am unwilling to believe and unable to believe that Mrs. Larwill was guilty of deliberate perjury. True she was nervous and somewhat unstrung, which condition may be attributable to her age and condition of health; but there is nothing in her manner, appearance or relation to the case upon which a charge of perjury can seriously be based. She is certainly a woman of average intelligence; her story was consistent, and it must be manifest that she had no possible interest in the outcome of this litigation and does not appear to be related, in business or otherwise, to any of the parties to the suit. She was naturally interested in the matter, having owned the property at

one time, and therefore would naturally know and remember the facts in regard to the use of this right-of-way.

The testimony of Doctor Eckert was to me very plausible. The doctor seemed to be very careful and conscientious in what he said. He was not extreme in his statements at any point. He appeared to me to be a man who earnestly sought to tell the truth as he remembered it, without exaggeration; and it seems improbable that he could have repeatedly driven through this right-of-way into the Botsford premises during the period he was the owner of the same if any obstruction existed which would prevent the use of the same as a right-of-way. The very fact that he noticed no obstruction in such right-of-way makes conclusive the proposition that this parcel of land was sufficiently open to be used as a right-of-way. It is not an unusual thing at all that in the rear of a block such as the Shafer Block there should be located receptacles for ashes and garbage. A person driving over this right-of-way would not be interested in such receptacles, unless they were so situated as to seriously obstruct the right-of-way and render passage to said right-of-way either difficult or impossible. Doctor Eckert very naturally had no memory as to whether or not there were any obstructions of the kind enumerated in the rear of the Schafer Block; nor could he be expected to notice the gratings at the windows unless they were so situated as to interfere with the use of the right-of-way.

I might say the same as I have of Doctor Eckert in regard to the other witnesses for plaintiff who testified in regard to the use of this right-of-way; and in my opinion the evidence is overwhelmingly in favor of the plaintiffs in regard to this issue of fact as to the use of this driveway. But even if the evidence of the plaintiffs and the evidence of the defendants were of equal weight, the case, on the question of fact alone, would have to be decided in favor of the plaintiffs, because the burden of proof is upon the defendants to establish such obstruction and such use of the premises upon which this right-of-way was located as to show open, notorious possession of the same adverse to such right-of-way.

But even if it be admitted, for the purpose of argument, that the facts in regard to this fence and its continuance where it was

located, are as claimed by the defendants, still I believe the case should be decided in favor of the plaintiffs. The most that can be claimed for this evidence is, that there was a picket fence located on the line between the Schafer and Botsford properties at the time Schafer made and delivered his deed to Miss Botsford, and that this fence was permitted by both parties to remain undisturbed until it had rotted down so that nothing was left but the posts and the lower rail and base-board. If the fact that this fence was allowed to remain where it was ever constituted adverse possession, the question must necessarily arise, when did it commence to constitute such adverse possession? What act was done by Henry Schafer and those claiming under or through him to make the existence of this fence evidence of adverse possession? The only answer to this question must be the making of the deed by which Henry Schafer granted this right-of-way to Miss Botsford, for the reason that it was the only act in reference to this right-of-way done by him and those claiming through him up to and until about four years ago, when a new fence was constructed by the defendants at the end of this right-of-way. In other words, we are able to charge Mr. Henry Schafer with having in mind a purpose, which purpose he did not disclose to his grantee—a purpose at once and immediately to hold this property adverse to the right-of-way at the very instant when he granted the same and deeded it to Lucy A. Botsford, and that this purpose, arising in his mind and being in his mind but undisclosed, was sufficient to constitute adverse possession of the premises as against his grantee, the grantee being in ignorance of any such purpose.

The defendants in this action, tacitly at least, admit that the above is their claim by the fact that they figure the commencement of their term of adverse possession from the very date of the delivery of the deed. Such a proposition must be and is repugnant to every sense of right, equity and justice, and can not be the law. While a person may acquire title as against his grantee by adverse possession, his intention to hold the premises adverse to his grantee must be evidenced by some overt act sufficient to inform his grantee that he intends to hold the premises adversely. *P., Ft. W. & C. Ry. Co.* v. *City of Canton et al,* 10

C. C., 414; *Lane* v. *Kennedy,* 13 O. S., 42, 46, 47; *C., H. & D. Ry. Co.* v. *Wachter,* 70 O. S., 113.

In the 10 C. C. the court say in the syllabus:

"The mere undisturbed possession of land by the grantor, after delivery of the deed, for any length of time, will not be considered adverse as against the grantee. Nothing but a clear unequivocal and notorious act on the part of the grantor that would at once advise the grantee of the purpose of the grantor to hold the land against the grantee, would bar the latter's right if continued for twenty-one years." 10 C. C., 414.

The court in 13 O. S. say:

"The fact of possession *per se,* is only an introductory fact to a link in the chain of title by possession, and will not simply of itself, however long continued, bar the right of entry of him who was seized, and, of course, creates no positive title in any case. The reason, in other words, is, that it may have been a permissive possession, which, in the language of the master of the rolls, in 2 Jac. & Walk. R., 1, however long it may, in point of fact, have endured, could never ripen into a title against anybody. To make such possession *adverse* there must have been an intention on the part of the person in possession to *claim title,* so manifested by his declarations or his acts, that a failure of the owner to prosecute within the time limited, raises a presumption of an extinguishment or a surrender of his claim." 13 O. S., 46, 47.

Defendants base their right entirely upon the maintenance of this old fence at one end of the right-of-way. In reference to such evidence of adverse possession, the circuit court of the sixth circuit say:

"A fence or enclosure is only one element of the evidence that is necessary to establish such possession as would finally ripen into what would be in effect a title. * * * The main question is not whether a fence is around or upon the premises, but under what circumstances was the fence built and maintained, and under what claim." *Reynolds* v. *Newton,* 14 C. C., 433.

By the deed from Mr. Schafer to Miss Botsford, she and her heirs and assigns are made co-tenants of this right-of-way, along with Mr. Schafer, his heirs and assigns; and it is well settled law that one co-tenant could not secure title as against the other co-

tenant by mere exclusive possession only. Judge Hunt, of the Superior Court of Cincinnati, states the law as follows:

"In order to constitute disseizin of the co-tenant, there must be some overt act of an unequivocal character to the denial and exclusion of the right of the other co-tenants in the common premises. The mere occupancy by one tenant of the common premises is no evidence of the ouster of the co-tenant." *Gould* v. *Franz*, 5 N. P., 205.

The Supreme Court states the law as follows:

"The statute of limitations does not run in favor of a tenant in common in the occupancy of the premises, against his co-tenant, until some overt act of an unequivocal character, clearly indicating an assertion of ownership of the entire premises to the exclusion of the right of a co-tenant." *Youngs* v. *Heffner*, 36 O. S., 232.

The defendants plead in their answer abandonment or such non-user as would permit the inference of abandonment; but there is absolutely no evidence in support of this proposition. The evidence, on the contrary, tends to show beyond a question that Miss Botsford and all those claiming under her have always intended to claim this right-of-way, and under the law abandonment is a matter of intention. *Garlick* v. *P. & W. Ry. Co.*, 67 O. S., 223; *Hatch* v. *C. & I. R. R. Co.*, 18 O. S., 92, 121. In the latter case the court say:

"But the question of abandonment or not, is a question of intention. *Junction Railroad Company* v. *Ruggles,* 7 Ohio St., 1." 18 O. S., 121.

The right-of-way granted by Mr. Schafer to Miss Botsford was not a right-of-way personal to herself, but evidently was intended as a right-of-way appurtenant and subservient to the premises which she owned next adjoining the premises owned by Mr. Schafer. This is evidenced by the fact that the right-of-way is granted to her, her heirs and assigns; that it starts from the public highway and terminates at the line of her land, and would be, as to her, a useless cul-de-sac unless it was intended to be granted for a right-of-way leading to and to be used in connection with the premises owned by Miss Botsford herself.

In the case in the 23d O. S., cited by defendants' counsel, the charge of the court which was sustained by the Supreme Court was as follows:

"If the jury shall find from the evidence that at the date of the deed made by Lasley to Logue, marked 'A,' the said Alexander Logue, grantee therein, was not the owner in fee or otherwise of some real estate adjoining the farm through which said right-of-way is granted, or situate in the neighborhood so that said right of way may become appurtenant to the same, then the said deed conveys a right-of-way personal to himself alone—one which can not descend to his heirs, and one which he can not assign or release to another person, except such other person be the owner of the farm through which said way was granted." 23 O. S., 616.

In that case the grantee had no land to which the right-of-way could lead; but in this case the grantee had land to which the right-of-way did lead, and measured by the same rule as that laid down in the 23d Ohio State case, it would clearly show an intention to make such right-of-way appurtenant to the land of Miss Botsford to which said right-of-way ran.

Judge Hollister, of the Hamilton County Common Pleas Court, states the law as follows:

"Whether or not a right-of-way is in gross or appurtenant to the land depends not alone on the language of the instrument by which it is granted, but on the circumstances of its intended use, the situation of the land and the occasion which gave rise to the necessity for its existence." *Jones Fertilizing Co.* v. *C., C., C. & St. L. Ry. Co.*, 2 O. D., 511 (286).

The case of *Hooper* v. *Barnes*, 13 Cal., 636, is on all fours with the case at bar. In that case the Supreme Court of California held that the right-of-way was appurtenant to the land, and not a right-of-way in gross.

I have considered this case with a great deal of care; I have examined the authorities, and have studied the briefs that have been filed; and I am compelled, by the force of the evidence and by the law applicable to the facts proven, to hold that this right-of-way, this easement, can not be taken from the plaintiffs, and that they are clearly, by the great weight of the evidence and

under the law, entitled to the relief they ask. The prayer of the petition must be granted.